UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| GABRIEL ORLANDO RAMIREZ,<br><br>Movant,<br><br>vs.<br><br>UNITED STATES OF AMERICA,<br><br>Respondent. | 4:22-CV-04146-KES<br><br>REPORT AND RECOMMENDATION |

## INTRODUCTION

This matter is before the court on the amended and original *pro se* motions of Gabriel Orlando Ramirez to vacate, correct, or set aside his sentence pursuant to 28 U.S.C. § 2255.  See Docket Nos. 1 & 12.[1]  Now pending is a motion by the United States ("government") to dismiss Mr. Ramirez's motion without holding an evidentiary hearing.  See Docket No. 27.

Mr. Ramirez opposes the motion and moves to compel the production of certain evidence.  Docket Nos. 31 & 33.  This matter was referred to this magistrate judge for a recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and DSD LR 57.11.

---

[1] Documents cited from this civil habeas file will be cited using the court's assigned docket number.  Documents from Mr. Ramirez's underlying criminal case, United States v. Ramirez, 4:19-CR-40035-KES (D.S.D.), will be cited using the court's assigned docket number preceded by "CR."

## FACTS

### A. District Court Proceedings

#### 1. Pretrial and Trial

The government indicted Mr. Ramirez, charging him with a single count of conspiracy to distribute 500 grams or more of a mixture and substance containing methamphetamine, in violation of 21 U.S.C. §§ 841(a) and 846. CR Docket No. 1. He made his initial appearance on June 3, 2019, and was released on conditions. CR Docket No. 11. Attorney Manuel de Castro was appointed to represent him. CR Docket No. 8. Mr. de Castro very shortly thereafter moved to withdraw due to a conflict of interest. CR Docket No. 16. That motion was granted and attorney Janet Olson was appointed in his stead as Mr. Ramirez's lawyer. CR Docket No. 17.

Three months later, Ms. Olson moved to withdraw due to a breakdown in communication with Mr. Ramirez. CR Docket No. 29. A hearing was held on that motion at which time both Ms. Olson and Mr. Ramirez informed the court they wished to withdraw the motion. Several months later, attorney Michael Hanson filed a notice of appearance indicating that Mr. Ramirez had privately retained him. CR Docket No. 39.

Mr. Ramirez availed himself of his right to a jury trial, which began on July 21, 2020. CR Docket Entry Immediately Following Docket No. 75. On the second day of trial, Mr. Ramirez filed a *pro se* letter with the district court complaining about Mr. Hanson's performance and asking for additional time to hire a different lawyer. CR Docket No. 73. The court denied Mr. Ramirez's

motion. CR Docket No. 74. After three days of trial, the jury returned a verdict of guilt. CR Docket No. 79.

### 2. Sentencing

In preparation for sentencing, a draft presentence investigation report ("PSR") was filed. CR Docket No. 89. Mr. Hanson filed three written objections to the PSR all as to the amount of drugs attributed to Mr. Ramirez. CR Docket No. 90. Prior to the sentencing hearing, Mr. Hanson filed with the court several letters from family and friends of Mr. Ramirez supporting him. CR Docket No. 91. Mr. Ramirez filed a written allocution statement for the court to consider at sentencing. CR Docket No. 92. In that statement, he did not admit his guilt other than an oblique reference to "mistakes" he made in his life which he regretted. Id. The main thrust of his statement was to inform the court that he had started his own construction business and to urge the court to allow him to continue operating this business rather than go to prison. Id.

The probation officer who authored the PSR declined to make any changes to the reported drug amounts based on Mr. Hanson's objections. CR Docket No. 94. The final PSR attributed 21,045 grams (21.04 kilograms) of methamphetamine to Mr. Ramirez. CR Docket No. 93 at p. 6, ¶ 17. The PSR calculated Mr. Ramirez's advisory United States Sentencing Guidelines ("USSG") sentencing range as follows: total offense level of 38 (no adjustments) and a criminal history category of III, yielding a sentencing range of 292 to 365 months' imprisonment. Id. at pp. 6-7, ¶¶ 22-30; p. 10 at ¶ 42; p. 13 at ¶ 62.

The statutory penalty included a mandatory minimum of 10 years' imprisonment (120 months) and a maximum of life. Id. at p. 10, ¶ 61.

At the sentencing hearing, the district court overruled counsel's objections to the drug amounts. CR Docket No. 109 at p. 10. The court then reiterated the same USSG calculation that had been set forth in the PSR and both counsel agreed it was accurate. Id. at pp. 10-11.

Mr. Hanson then argued on behalf of Mr. Ramirez. Id. at pp. 11-15. Mr. Ramirez was given an opportunity to speak and he merely apologized to the court and to his family for "getting hooked" on this drug; he made no admission of guilt regarding distribution of the drug. Id. at p. 15.

The district court granted a downward variance from the USSG range. Id. at p. 19. The district court imposed a sentence of 240 months' imprisonment. CR Docket No. 98 at p. 2.

**B.    Direct Appeal**

Mr. Ramirez timely appealed and was represented on appeal by Mr. Hanson. United States v. Ramirez, 21 F.4th 530 (8th Cir. 2021). He raised two issues: (1) the district court erroneously calculated the amount of drugs attributable to Mr. Ramirez at sentencing and (2) the evidence adduced at trial was insufficient to support the jury's verdict. Id. at 532. The court rejected both of these arguments and affirmed the lower court. Id. at 533-35.

**C.    Mr. Ramirez's § 2255 Motion**

Mr. Ramirez timely filed his § 2255 motion with this court, raising four claims for relief:

4

     1.    Mr. Hanson rendered ineffective assistance of counsel by failing to "investigate, apprise Petitioner of the facts, omitted and misleaded [sic] Petitioner with vital case information, demonstrated half-heartedness [sic] performance, failed to expalin [sic] the PSR and the information contained in the PSR and file Objections, failed to adequately consult with Petitioner. On Counsel's defective advice, Petitioner proceded to trial, had counsel performed effectively Petitioner would not have gone to trial and tried to obtain a most favorable plea [sic] as possible."

     2.    "Petitioner proceded to trial with omitted information, misunderstood information and without the awareness and understanding of the full version of the facts rendering ineffective assistance of counsel and a null and void decision to proceed to trial. Had Counsel apprised, properly informed, not misleaded [sic] or deceived Petitioner, engaged in plea negotiations, investigated that facts, and challendged self-serving statements used against Petitioner, Petitioner would not have gone to trial and in stead [sic] could have pleaded guilty and sought the most favorable plea offer."

     3.    "Appellate counsel was ineffective for his failure to communicate, consult with petitioner concerning the appeal. Counsel was not trial cousnel [sic] and did not possess the intimate facts to the trial. Had Appellate Counsel communicated and consulted with Petitioner, Counsel would have learned of the intimate facts concerning the trial, evidence and testimony that would have allowed Appellate Counsel to supplement the Record for purposes of raising additional arguments and during direct appael."

     4.    "Petitioner submits that his decision to go to trial was unconstitutionally procured rendering null and void because it was made unknowingly, unintelligently, and involuntarily due to Counsel's misleading, inaccurate, deceptive, and ommited [sic] set of facts and advice. . . . Had Counsel apprised, properly informed, not misleaded [sic] or decieved [sic] Petitioner, . . . Petitioner would not have gone to trial and in its stead would have pleaded guilty and sought the most favorable plea offer."

Docket No. 1 at pp. 4-8.

Subsequent to the filing of his original motion, Mr. Ramirez amended his

§ 2255 motion and asserted a single claim: that Mr. Hanson rendered

5

ineffective assistance of counsel by failing to inform Mr. Ramirez about a plea offer extended by the government prior to trial.  See Docket No. 12.  It is unclear to the court whether Mr. Ramirez intended to completely supersede his prior § 2255 motion with his amended motion, or whether the amended motion was intended to supplement the original motion.  Because of this uncertainty, the court addresses all claims that were raised in both Docket No. 1 and 12.

The government now moves to dismiss all of Mr. Ramirez's claims without holding an evidentiary hearing.  Docket No. 27.  Mr. Ramirez opposes the motion.  Docket No. 31.

## DISCUSSION

**A.    Scope of a § 2255 Motion**

Section 2255 of Title 28 of the United States Code was enacted to supersede habeas corpus practice for federal prisoners.  Davis v. United States, 417 U.S. 333, 343-44 (1974).  Section "2255 was intended to afford federal prisoners a remedy identical in scope to federal habeas corpus."  Id. at 343.  Prior to the enactment of § 2255, habeas claims had to be brought in the district where the prisoner was confined, resulting in overburdening those districts where federal correctional institutions were located and presenting logistical issues because the record in the underlying criminal case was often in a distant location.  United States v. Hayman, 342 U.S. 205, 212-16 (1952).  The enactment of § 2255 resolved these issues by requiring that the motion be filed in the sentencing court.  Id.

The scope of a § 2255 motion is seemingly broader than the scope of a habeas petition, the latter of which is typically limited to allegations of a constitutional dimension. Section 2255 allows a federal prisoner to "vacate, set aside or correct" a federal sentence "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." See 28 U.S.C. § 2255(a). Where the allegation for relief is *not* based on a violation of a Constitutional or federal statutory right or an assertion that the court was without jurisdiction, the Supreme Court has read a "fundamentality" requirement into § 2255—relief is available for only those errors which constitute a "fundamental defect which inherently results in a complete miscarriage of justice" or "an omission inconsistent with the rudimentary demands of fair procedure." Hill v. United States, 368 U.S. 424, 428 (1962); see Peguero v. United States, 526 U.S. 23, 27-30 (1999) (noting collateral relief may be appropriate when a movant is prejudiced by a court's error).

Generally, petitioners are precluded from asserting claims pursuant to § 2255 that they failed to raise on direct appeal. United States v. Frady, 456 U.S. 152, 158-59, 167-68 (1982); United State v. Darden, 915 F.3d 579, 586 (8th Cir. 2019) (finding proper standard for reviewing claims not raised on direct appeal is cause and prejudice). When a § 2255 petitioner asserts a claim that is procedurally defaulted because it was not raised on direct appeal, the

claim can only proceed after the petitioner has shown either: (1) actual innocence or (2) that the procedural default should be excused because there was both cause for the default and actual prejudice to the petitioner. Bousley v. United States, 523 U.S. 614, 621-22 (1998); McNeal v. United States, 249 F.3d 747, 749 (8th Cir. 2001). Therefore, barring a claim of actual innocence, a petitioner must show both cause for why he failed to raise an issue on direct appeal as well as actual prejudice caused by the alleged errors. If a movant fails to demonstrate prejudice, the court need not address whether cause exists to excuse a procedural default. Moore-El v. Luebbers, 446 F.3d 890, 898 (8th Cir. 2006).

Appellate courts generally refuse to review claims of ineffective assistance of counsel on direct appeal; such claims are, therefore, properly addressed in a 28 U.S.C. § 2255 motion such as the one here. See United States v. Campbell, 6 F.4th 764, 775-76 (8th Cir. 2014); United States v. Lee, 374 F.3d 637, 654 (8th Cir. 2004) ("[I]neffective assistance of counsel [claims] are generally not cognizable on direct appeal" and "may be heard only if a miscarriage of justice would otherwise result . . . or if the district court has developed a record on the issues."). Therefore, no procedural default analysis is required before examining petitioner's claims of constitutionally-deficient counsel.

**B.    Vague, Conclusory Claims Do Not Entitle Mr. Ramirez to Relief**

The government moves to dismiss most of Mr. Ramirez's claims because he never gives the court specifics about his claims, but relies on vague or conclusory allegations. The court agrees.

8

When a motion to dismiss is made, conclusory allegations do not suffice to rebut the motion. Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009) (conclusory allegations do not suffice to rebut a Rule 12(b)(6) motion). In the specific context of a habeas proceeding like Mr. Ramirez's, a petitioner must give details and specifics. Bryson v. United States, 268 F.3d 560, 562 (8th Cir. 2001) (vague and conclusory habeas claims do not entitle a petitioner to relief); Spillers v. Lockhart, 802 F.2d 1007, 1009-10 (8th Cir. 1986) (same).

Here, for the vast majority of his claims, Mr. Ramirez never gives any details. He claims counsel did not tell him all the facts of his case that would be presented at trial, but never tells the court *which* facts were omitted or misrepresented. Mr. Ramirez had a trial. He heard and saw the government's evidence first-hand. But he never articulates what evidence he saw at trial that he did not know about before the trial.

He also claims counsel did not object to the PSR. Actually, Mr. Hanson *did* file objections to the PSR. Mr. Ramirez never explains to the court what additional objections he believes Mr. Hanson should have made.

Mr. Ramirez claims his appellate counsel was not his trial counsel, which is false. Mr. Hanson represented Mr. Ramirez both at the district court level as well as on appeal. But even so, Mr. Ramirez claims appellate counsel failed to raise claims on appeal without ever saying what those claims were.

All of these claims were claims of ineffective assistance of counsel. As explained in more detail below, Mr. Ramirez has the burden of demonstrating that counsel's representation was deficient and that that deficient

representation prejudiced Mr. Ramirez. Strickland v. Washington, 466 U.S. 668, 687 (1984). Without Mr. Ramirez supplying the necessary details of how he believes Mr. Hanson's conduct fell below the standard of reasonableness the court cannot determine whether Mr. Hanson's representation was ineffective. Similarly, without the details about what was done wrongly or omitted, the court cannot evaluate whether Mr. Ramirez was prejudiced. In short, Mr. Ramirez has not carried his burden on these claims.

The court notes Mr. Ramirez has had multiple opportunities to state the specifics of his claims. He filed a § 2255 form and failed to put the details in that document. See Docket No. 1. He filed a memorandum in support of his § 2255 motion, yet he failed to include any details of his claims in that document. See Docket No. 2. Mr. Ramirez also filed a declaration in support of his § 2255 motion in which he also failed to give the court the details of how his alleged counsel's representation was deficient. Docket No. 3. He subsequently filed an amended motion which also did not supply any details about these claims. Docket No. 12.

Then the government filed its motion to dismiss, explaining to Mr. Ramirez that his claims lacked details or specifics and explaining that such claims must be dismissed. See Docket Nos. 27 & 28. Thereafter, Mr. Ramirez—being now fully informed that his articulation of his claims was lacking—filed a response to the government's motion and, again, failed to give the court details about *how* or in *what ways* counsel's conduct was deficient as to the general claims set forth above. See Docket No. 31.

The court also notes that Mr. Ramirez's former trial counsel, Janet Olson, filed an affidavit in this case in which she stated under oath that she went over discovery in Mr. Ramirez's case with him, including listening with him to the recorded buys and conversations between himself and government informants. Docket No. 21. Ms. Olson also reviewed with Mr. Ramirez his sentencing information, including the fact he was facing a 10-year mandatory minimum sentence and that the government's evidence was "very bad" against him. Id. Ms. Olson also reviewed the USSG with Mr. Ramirez and explained she projected a sentencing range of 360 months' imprisonment to life. Id. She explained that if Mr. Ramirez pleaded guilty, he would receive a downward adjustment to his USSG calculation for acceptance of responsibility. Id.

Mr. Ramirez does not take issue with Ms. Olson's statements in her affidavit. If her statements are true, the fact that Mr. Hanson may not have gone over discovery or explained the benefit of pleading guilty under the USSG, or what his likely sentence would be would not have prejudiced Mr. Ramirez because he already had that information from Ms. Olson.

The court concludes that the vast majority of the claims articulated by Mr. Ramirez in his § 2255 motion—save one—must be dismissed as vague and conclusory.

## C. Failure to Present Plea Offer

### 1. Standard Applicable to Ineffective Assistance Claims

The one claim that is articulated with sufficient clarity and detail by Mr. Ramirez is his claim that counsel never presented him with any plea offers from the government.

The Sixth Amendment of the Constitution of the United States affords a criminal defendant with the right to assistance of counsel. U.S. CONST. amend. VI. The Supreme Court "has recognized that 'the right to counsel is the right to the effective assistance of counsel.' " Strickland v. Washington, 466 U.S. 668, 686 (1984) (quoting McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970)). Strickland is the benchmark case for determining whether "counsel's assistance was so defective as to" violate a criminal defendant's Sixth Amendment rights and "require reversal of a conviction." Id. at 687.

"When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness." Id. at 687-88. The defendant must also show that counsel's unreasonable errors or deficiencies prejudiced the defense and affected the judgment. Id. at 691-92. The defendant must show "there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." Id. at 695. In sum, a defendant must satisfy a two-prong test. Id. at 687.

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the

> defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.  Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

Id.

"There is a presumption that any challenged action was sound trial strategy and that counsel rendered adequate assistance and made all significant decisions in the exercise of professional judgment." Hall v. Luebbers, 296 F.3d 685, 692 (8th Cir. 2002) (internal quotation omitted).  It is the petitioner's burden to overcome this presumption, and a "petitioner cannot build a showing of prejudice on a series of errors, none of which would by itself meet the prejudice test." Id. (citing Wainwright v. Lockhart, 80 F.3d 1226, 1233 (8th Cir. 1996)).  Courts may address deficient performance and prejudice in any order, and courts need not "address both components . . . if the defendant makes an insufficient showing on one." Strickland, 466 U.S. at 697.

Counsel's conduct must be judged by the standards for legal representation which existed at the time of the representation, not by standards promulgated after the representation.  See Bobby v. Van Hook, 558 U.S. 4, 7-9 (2009).  " 'American Bar Association standards and the like' are 'only guides' to what reasonableness [of counsel's conduct] means, not its definition." Id. (quoting Strickland, 466 U.S. at 688).  "[T]he reasonableness of counsel's challenged conduct [must be judged] on the facts of the particular case, viewed as of the time of counsel's conduct." Strickland, 466 U.S. at 690;

13

see also Rompilla v. Beard, 545 U.S. 374, 381 (2005) (emphasizing that "hindsight is discounted by pegging adequacy to 'counsel's perspective at the time' investigative decisions are made."); Bell v. Cone, 535 U.S. 685, 698 (2002) (reiterating that "every effort [must] be made . . . to evaluate the conduct from counsel's perspective at the time.").

The Supreme Court distinguishes between those cases "in which the new evidence 'would barely have altered the sentencing profile presented to the sentencing judge,' " and those that would have had a reasonable probability of changing the result. Porter v. McCollum, 558 U.S. 30, 41 (2009) (quoting Strickland, 466 U.S. at 700). In assessing the prejudice prong, courts should consider "the totality of the available mitigation evidence—both that adduced at trial, and the evidence adduced in the habeas proceeding—and reweigh it against the evidence in aggravation." Id. at 41 (internal quotation omitted, cleaned up). It is not necessary for the movant to show "that counsel's deficient conduct more likely than not altered the outcome" of his case, only that there is "a probability sufficient to undermine confidence in [that] outcome." Id. at 44 (internal quotation omitted). "Judicial scrutiny of counsel's performance must be highly deferential" with "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689.

A criminal defendants' Sixth Amendment right to effective assistance of counsel extends to the plea bargaining process. Lafler v. Cooper, 566 U.S. 156, 162 (2012). In general, "defense counsel has the duty to communicate formal

14

offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." Missouri v. Frye, 566 U.S. 134, 145 (2012).

"Even if the trial itself is free from constitutional flaw, the defendant who goes to trial instead of taking a more favorable plea may be prejudiced from either a conviction on more serious counts or the imposition of a more severe sentence." Lafler, 566 U.S. at 166.

When a defendant was convicted at trial of the same charge that would have been admitted in a plea agreement, "the court may conduct an evidentiary hearing to determine whether the defendant has shown a reasonable probability that but for counsel's errors he would have accepted the plea." Id. at 171. If the defendant makes that showing, the court has discretion to impose a sentence under the terms of the plea agreement, to reaffirm the sentence the defendant received after trial, or "something in between." Id. Where the charge(s) the defendant was convicted of at trial are different from the charge(s) to which he could have pleaded guilty pursuant to the plea offer, the court can order the prosecution to reoffer the plea proposal. Id.

### 2. Application of the Law to Mr. Ramirez's Claim

Ms. Olson states she received a request from the government that Mr. Ramirez proffer, but she never received a plea offer. Docket No. 21. Mr. Hanson states in the most conclusory way possible that he told Mr. Ramirez of the plea agreement. See Docket No. 22 at p. 1. Mr. Hanson gives no details such as the contents of the plea offer, the date he received the offer, the date he spoke to Mr. Ramirez about the plea offer, what he and his

15

client discussed in connection with the plea offer, what parts of the plea offer were objectionable to his client, or any other details. Id. He does not even advise whether he disclosed the presence of the plea offer to Mr. Ramirez before or after his trial. Id.

Mr. Ramirez, for his part, counters Mr. Hanson's affidavit with a great deal of contextual detail. He states he was never advised that the government made a plea offer prior to trial. See Docket No. 32 at pp. 5-6. After trial, when Mr. Ramirez was being detained pending sentencing, another inmate told him the government normally makes a plea offer and that it was very unusual that the government had not done so in Mr. Ramirez's case. Id. This conversation prompted Mr. Ramirez to call Mr. Hanson and make inquiry as to why the government never extended a plea offer to him. Id.

According to Mr. Ramirez, it was only then, after the trial, that Mr. Hanson told Mr. Ramirez the government *had* actually extended a plea offer. Id. When Mr. Ramirez asked Mr. Hanson why he had not told Mr. Ramirez about the plea offer, Mr. Hanson allegedly stated it would not have made any difference because Mr. Ramirez would not receive a sentence in excess of 10 years even if he availed himself of his trial rights. Id. Mr. Ramirez alleges this conversation between himself and Mr. Hanson took place during the second week of August 2020. See Docket No. 12 at p. 3. Had a plea offer been presented to Mr. Ramirez, he asserts he would have accepted it.

The court finds that this issue requires an evidentiary hearing to resolve as it involves a credibility determination to resolve the conflict in Mr. Ramirez's

16

testimony and Mr. Hanson's testimony.  Mr. Ramirez's allegation is not plainly contradicted by the record.  His assertion is not a bald assertion, but is ensconced in contextual detail that gives it some credence.

There are many unanswered questions that should be addressed by the presentation of evidence.  For example, the government faults Mr. Ramirez for not telling the court the terms of the plea offer.  But Mr. Ramirez alleges he was never given the written plea offer.  If true, the court finds it perfectly reasonable that Mr. Ramirez does not know the terms of that offer.  The government should have the plea offer in its records and it should be produced at an evidentiary hearing.  One of the elements the court must evaluate is whether the sentence under the plea offer, had the offer been accepted, would have been more favorable than the 20-year sentence Mr. Ramirez received without the benefit of a plea agreement.

Also Mr. Hanson undoubtedly has billing records and file notes indicating when he met with his client and what was discussed as well as records of his communication with the government explaining whether and why the plea offer was being rejected.  Since Mr. Hanson's allegations are devoid of any detail, the court expects that is an omission that can be remedied at an evidentiary hearing.

D.     **Motion to Compel**

Mr. Ramirez moves the court for an order compelling the government to produce all phone recordings of phone calls placed by himself to Mr. Hanson from the South Dakota State Penitentiary between August 10, 2020, to

December 25, 2020.² See Docket No. 33.  He also seeks recorded phone calls from FCI Oxford between March and November 2021.  Id.  The government has not responded to this motion.

The court denies the latter part of Mr. Ramirez's motion.  He has not alleged in his § 2255 motion that the critical conversations about the plea offer took place after he was in federal prison in the spring following his sentencing.  Rather, he asserts the conversations took place after trial and before sentencing.  Accordingly, the court orders that the government make inquiry of the South Dakota State Penitentiary to determine whether inmate phone recordings from August 1 to November 30, 2020, are still available for production.  If they are, the court recommends that Mr. Ramirez's motion to compel be granted in part to require production of these recordings to both parties.

## CONCLUSION

Based on the foregoing facts, law, and analysis, this magistrate judge respectfully recommends granting the government's motion to dismiss [Docket No. 27] all claims asserted by Mr. Ramirez in his original § 2255 motion [Docket No. 1], and denying the motion to dismiss the sole claim asserted by Mr. Ramirez in his amended § 2255 motion [Docket No. 12].  The court recommends that an evidentiary hearing be held on the claim in Docket No. 12.

---

² Mr. Ramirez's motion seeks phone calls from the fall of 2021, but the court believes this to be a typographical error.  Mr. Ramirez was convicted in July 2020 and sentenced November 13, 2020, so the time period during which Mr. Ramirez was held pending sentencing was in the fall of 2020, not 2021.

The court further recommends that Mr. Ramirez's motion to compel [Docket No. 33] be granted in part as set forth above if the recordings he seeks are still maintained.

## NOTICE TO PARTIES

The parties have fourteen (14) days after service of this report and recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained. Failure to file timely objections will result in the waiver of the right to appeal questions of fact. Objections must be timely and specific in order to require *de novo* review by the district court. Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990); Nash v. Black, 781 F.2d 665 (8th Cir. 1986).

DATED this 28th day of July, 2023.

BY THE COURT:

_____
VERONICA L. DUFFY
United States Magistrate Judge